UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

NEWARK VICINAGE

**NOT FOR PUBLICATION**

| | | |
|---|---|---|
| THADDEUS THOMAS, | : | |
| | : | CIVIL NO. 14cv5532(SRC) |
| Plaintiff, | : | |
| | : | |
| | : | OPINION |
| v. | : | |
| | : | |
| | : | |
| MERRIL MAIN ET AL., | : | |
| | : | |
| DEFENDANTS, | : | |

Plaintiff is a civilly committed detainee under New Jersey's Sexually Violent Predator Act, confined at East Jersey State Prison. (Compl., ECF No. 1.) Plaintiff submitted a civil rights complaint to this Court, and the Court has granted Plaintiff's request to proceed without prepayment of fees pursuant to 28 U.S.C. § 1915. (Order, ECF No. 6.) This case is now subject to preliminary review by the Court pursuant to § 1915(e)(2)(b).

When a person is proceeding in forma pauperis under 28 U.S.C. § 1915, the statute requires the court to "dismiss the case at any time if the court determines that" the action is frivolous or

1

malicious; the action fails to state a claim upon which relief may be granted; or the action seeks monetary relief against a defendant who is immune from such relief.   28 U.S.C. § 1915(e)(2)(B).   As pled, Plaintiff's complaint fails to state a claim upon which relief may be granted.   Therefore, the Court will dismiss the complaint.

## I.   BACKGROUND

The first defendant named in the complaint is Merril Main, identified as the D.H.S. Clinical Director.   (Compl., ECF No. 1 at ¶4(b)).   Plaintiff alleges Main spread "a false light" on Plaintiff's character; authorized D.O.C. to put Plaintiff in lock-up for Main's own personal reasons; and used his authority to make D.O.C. officers harass Plaintiff because he filed a lawsuit against treatment staff."   (Id.)

The second named defendant is Stacey Kaminiski, identified as the "D.O.C. Admin. Major".   (Id. at 4(c)).   Plaintiff alleged Kaminski authorized her staff to put Plaintiff in lock-up without an investigation or hearing, and incident to his placement in lock-up, Plaintiff was strip searched with visual body cavity search while officers laughed.   (Id.)

Plaintiff alleges that Defendant Jacylen Ottino, the D.H.S. Program Coordinator, observed corrections officers abusing their

2

authority by keeping Plaintiff in isolation after he was cleared of charges, and not reporting this to her supervisors. (Id. at 4(e)).

The first incident leading to Plaintiff's complaint occurred in July 2014. Plaintiff alleged that he was wrongly identified as a problem prisoner by Merril Main, Stacey Kaminski and S. Davis, and as a result was removed from treatment and placed in 24-hour lock-up.[1] (ECF No. 1-1 at 4.) In this regard, Plaintiff attached to his complaint a letter he received from the State of New Jersey, Office of the Corrections Ombudsman, dated July 18, 2014. (ECF No. 1-2 at 6.)[2] Plaintiff was being considered for a move "off South Unit" due to good participation in treatment. (Id.) However, Dr. Main recommended not moving Plaintiff because he had made limited progress in controlling his behavior, and he was viewed as "an anti-therapeutic influence." (Id.)

---

1 Plaintiff has only alleged one date when he was placed in "lock-up," August 26, 2014. The Court assumes Plaintiff is referring to that incident here.
2 "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)(citing e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

3

The second incident giving rise to Plaintiff's complaint began on August 25, 2014, when Plaintiff's cell was searched, producing cigarette rolling papers and an electronic cigarette kit.  (ECF No. 1-1 at 1.)  Plaintiff believed he was allowed to have these items because he was a resident under the Civil Commitment Act and not a prisoner.  (Id.)  The following day, Plaintiff was taken to "lock-up" on the orders of Lt. J. Jones, who is named as a defendant in the complaint.  (Id.)

Plaintiff was strip searched, with a visual body cavity search, on his way into lock-up, while officers laughed.  (Id. at 3.)  An officer told Plaintiff there had not been an investigation that caused his lock-up, and that he was ordered to be locked up by D.H.S. Administrators J. Ottino, Shantay Adams, and Merril Main.  (Id.)  Plaintiff also alleged that on August 27, 2014 at 11:55 a.m. Internal Affairs cleared him of all charges, but Defendants Main, Adams and Ottino overrode the decision.  (ECF No. 1-2 at 3.)

On August 28, 2014, Plaintiff complained to J. Ottino that he was being kept in an empty room when he was supposed to be released the previous day.  (ECF No. 1-2 at 1.)  Plaintiff attached to his complaint an "Initial MAP [Modified Activities Program] Placement Review" dated August 27, 2014, and signed by S. Adams.  (ECF No. 1-2 at 9.)  The form indicates that Plaintiff was caught with

4

contraband in his cell, and he was initially placed in TCC[3] on August 26, 2014. (Id.)

Plaintiff also attached to his complaint a DHS Special Treatment Unit Inter-Office Communication dated August 27, 2014. (ECF No. 1-2 at 10.)  This document states Plaintiff was placed on TCC status on August 26, 2014, because he had rolling papers and an electronic cigarette in his cell.  (Id.)  The next day, Plaintiff's DHS treatment team decided to place him on MAP status, and he would lose job privileges and "packages." (Id.)  Plaintiff wrote on the bottom of this document that he was cleared of the contraband charges by the D.O.C. because he got the items through the mailroom two years earlier, and they were approved at that time.  (Id.)

In his Statement of Claims Plaintiff alleged:

> Causing my civil commitment rights under Title 30 to now be placed under DOC policy (prison guidelines 10A-code) turning what suppose to be a treatment facility into a prison facility.  But yet using the term special treatment unit to cover up the equivalent of a second prosecution that we/I am enduring constantly every day.

(Id.)

---

3 TCC stands for "Temporary Close Custody," and is a form of segregation used to control "emergent situations."  Deavers v. Santiago, 243 F. App'x 719, 720 (3d Cir. 2007).

Plaintiff asserted that under the "Patients Bill of Rights" his constitutional rights are being violated, including his right to smoke, his right to adequate and professional treatment, and his right to proper legal materials or a paralegal. (ECF No. 1-2 at 2.) Plaintiff alleged he is being harassed "from all angles" because he is a party to a lawsuit. (Id.) Plaintiff alleged violations of his rights under the First Amendment, Eighth Amendment and the Due Process and Equal Protection clauses of the Fourteenth Amendment. (ECF No. 1-2 at 3.)

Plaintiff also submitted a number of letters to the Court, requesting that the Court to treat those letters as addenda to the Complaint. (ECF Nos. 2, 5, 7-10.) As the Court has advised Plaintiff in prior case filings,[4] Plaintiff may not add claims or defendants to a complaint by filing a letter with the Court. Instead, Plaintiff must file an entirely new amended complaint in accordance with Federal Rule of Civil Procedure 15, and Local Rule 7.1(f). The Court will not address allegations contained in letters sent to the Court after Plaintiff filed his complaint.

---

4 See e.g. Opinion, Thomas et al. v. Kaminski et al., 14cv2328(SRC) (D.N.J. May 30, 2014) (ECF No. 7 at 10-11).

## II.   STANDARD FOR SUA SPONTE DISMISSAL

Plaintiff is proceeding in forma pauperis in this civil action.  Therefore, this Court must review the complaint and sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B).  The Court must liberally construe the complaint in Plaintiff's favor because he is proceeding pro se.  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The Court must also "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

In Ashcroft v. Iqbal, the Supreme Court revisited the standard for summary dismissal of a complaint that fails to state a claim upon which relief may be granted.  556 U.S. 662 (2009).  The Court examined the pleading standard under Federal Rule of Civil Procedure 8(a)(2), noting that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Id. at 677.  However, "[a] pleading that

7

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A complaint must be dismissed for failure to state a claim if it does not state a plausible claim for relief. Id. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citations omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. Finally, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002).

## III. 42 U.S.C. § 1983

Plaintiff brought this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

8

> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for redress
> ....

To state a claim for relief under § 1983, a plaintiff must allege

two things; first, the violation of a right secured by the

Constitution or laws of the United States; and, second, that the

alleged deprivation was committed or caused by a person acting

under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

## IV. THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT

Plaintiff is civilly committed under the New Jersey Sexually

Violent Predator Act ("SVPA").  (Compl., ¶1a.)  The New Jersey

SVPA provides for the custody, care and treatment of involuntarily

committed persons who are deemed to be sexually violent predators

("SVP").  N.J.S.A. 30:4-27.24 et seq.  The facilities designated

for SVPS are operated by the New Jersey Department of Corrections

("DOC").  N.J.S.A. 30:4-27.34(a).  The New Jersey Department of

Human Services ("DHS") provides for their treatment.  N.J.S.A.

30:4-27.34(b).

In passing the SVPA, the New Jersey Legislature made specific

findings regarding SVPs. N.J.S.A. 30:4-27.25.  The Legislature

noted that it was necessary to modify the previous civil commitment

9

framework and additionally separate SVPs from other persons who have been civilly committed. Id. The SVPA defines a SVP as:

> a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

The SVPA was amended in 2003, requiring that regulations be promulgated jointly by the DOC and the DHS, in consultation with of the Attorney General, taking "into consideration the rights of the patients as set forth in section ten of P.L.1965, c. 59 (C. 30:4-24.2) ... [to] specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators." N.J.S.A. 30:4-27.34(d). Those persons committed under the SVPA shall receive annual review hearings. N.J.S.A. 30:4-27.35. A SVP may be released from involuntary civil commitment upon recommendation of the DHS or by the SVP's own petition for discharge. N.J.S.A. 30:4-27.36.

**V. ANALYSIS**

    A.   Eighth Amendment Claim

Plaintiff did not distinguish his various constitutional claims. Instead, he described the conduct that he believed violated his rights, and listed which rights he believed were violated. The Court construes Plaintiff's Eighth Amendment claim as a conditions of confinement claim based on his placement in TCC, also referred to by Plaintiff as isolation or 24-hour lock-up. Plaintiff has alleged each individual defendant was aware of his placement in TCC.

The Eighth Amendment prohibits cruel and unusual punishment, which is judged by "'the evolving standards of decency that mark the progress of a maturing society.'" Graham v. Florida, 560 U.S. 48, 58 (2010)(citing Estelle v. Gamble, 429 U.S. 97, 102 (1976)(quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)(plurality opinion)). It isn't clear whether the Eighth Amendment is applicable to civilly committed persons under the NJ SVPA because such persons are civilly committed for "control, care and treatment," rather than for punishment. See Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005)(finding Eighth Amendment inapplicable to pretrial detainees because Eighth Amendment only applied after conviction).

Even if the Eighth Amendment is applicable, a short duration in segregation does not violate the Eighth Amendment if segregation

11

was imposed for legitimate security reasons. See Williams v. Lehigh Dep't of Corr., 79 F.Supp.2d 514, 518 (E.D. Pa. 1999)("[o]nly if the plaintiff demonstrates that the prison officials have exaggerated their response to security issues or they have acted unreasonably may the Court intervene"); Williams v. Armstrong, 566 F. App'x 106, 109 (3d Cir 2014)(per curiam)(112 days confinement in state prison's restricted housing unit did not violate Eighth Amendment). Here, Plaintiff was in segregation for one full and two partial days because contraband was found in his cell. This does not rise to the level of an Eighth Amendment violation, and the claim will be dismissed. This claim will also be addressed under the substantive due process clause of the Fourteenth Amendment.

B.  Equal Protection Claim

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)(citing Sioux City Bridge Co. v. Dakota County, NE, 260 U.S. 441, 445 (1923)(quoting Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352,

(1918)). A plaintiff may allege an equal protection claim by asserting that she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Olech, 528 U.S. at 564; but see Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 603 (2008)(declining to apply Olech standard in public employment context which involved discretionary decision making "based on a vast array of subjective, individualized assessments.")

Here, Plaintiff alleged he was put in "lock-up" for retaliation because he filed complaints against DHS employees. This does not constitute a valid Equal Protection claim because Plaintiff has not asserted he was intentionally treated differently from others similarly situated. Defendants may have placed others in lock-up in retaliation for filing complaints. While such misconduct may constitute a First Amendment retaliation claim, without more, it does not constitute an Equal Protection violation. Therefore, Plaintiff's equal protection claim against Defendants will be dismissed.

    C.   Retaliation Claim

Retaliation against a prisoner[5] based on his exercise of a constitutional right violates the First Amendment.  Bistrian v. Levi, 696 F.3d 352, 376 (3d Cir. 2012)(citing Mitchell v. Horn, 318 F.3d 523, 529-31 (3d Cir. 2003); Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001); Allah v. Seiverling, 229 F.3d 220, 224-26 (3d Cir. 2000).  To state a First Amendment retaliation claim, a plaintiff must allege (1) that he was engaged in constitutionally protected conduct; (2) he suffered some adverse action at the hands of the prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action.  Id. (citing Rauser, 241 F.3d at 333).

Plaintiff properly alleged the first two elements of a retaliation claim; his constitutionally protected conduct was filing lawsuits against officials, and those officials ordered or authorized Plaintiff's placement in "lock-up."  Plaintiff, however, has not alleged a plausible claim that his filing of lawsuits was a substantial and motivating factor in the decision to put Plaintiff in TCC on August 26, 2014 or of his subsequent placement in MAP.  On the face of the complaint and its

---

5 The Court sees no reason to treat a civilly committed SVP differently than a prisoner in analyzing a First Amendment retaliation claim.

14

attachments, Plaintiff was placed in TCC, and then the less restrictive MAP program, after contraband was found in his cell.

It is purely conjecture on Plaintiff's part that retaliation was a substantial or motivating factor of his placement in TCC. In a document Plaintiff attached to the Complaint, M. Cahill, the Program Coordinator wrote "He was seen by DHS staff on 8/27/2014 in order to conduct an initial MAP review.  At the time Mr. Thomas was unaware as to why he was placed on TCC status but did think it was related to being in possession of an electronic cigarette." (ECF No. 1-2 at 10.)  There is little significance to the fact that the D.O.C. approved Plaintiff's receipt of the electronic cigarette years earlier and, therefore, absolved him for possessing such in August 2014, because the D.H.S. rules prohibited possession of the electronic cigarette at the time it was found in Plaintiff's cell.  Thus, the Court will dismiss Plaintiff's First Amendment retaliation claim.

The Court also construes the complaint to contain a claim for denial of access to the courts, in violation of the First Amendment.  Plaintiff alleged he was denied his right "to proper legal materials or a paralegal." (ECF No. 1-2 at 2.)  In Bounds v. Smith, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison

15

authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977).

The Supreme Court limited this right in Lewis v. Casey, where it held that an inmate must show that the alleged inadequacies of a prison's library facilities or legal assistance program caused an actual injury, such as the inability to meet a filing deadline or to present a claim.  518 U.S. 343, 349 (1996).  Plaintiff has not alleged an actual injury.  Therefore, his First Amendment access to courts claim will be dismissed.

D.   Procedural Due Process Claim

Plaintiff alleged he was placed in lock-up without an investigation or hearing.  The Court construes this a procedural due process claim under the Fourteenth Amendment. "Unless the deprivation of liberty is in some way extreme, then the Constitution does not require that a prisoner be afforded any process at all prior to deprivations beyond that incident to normal prison life." Deavers v. Santiago, 243 F. App'x 719, 721 (3d Cir. 2007)(citing Sandin v. Connor, 515 U.S. at 486).

The Third Circuit extended Sandin's foreclosure of procedural due process protections to a plaintiff, civilly committed in New

16

Jersey, who claimed a procedural due process violation by his wrongful placement in a restricted activities program.   Id. (citing <u>Leamer v. Fauver</u>, 288 F.3d 532, 546 (3d Cir. 2002); <u>see also</u> <u>Thielman v. Leean</u>, 282 F.3d 478 (7th Cir. 2002)(likewise extending <u>Sandin</u> to civil commitment settings).   Therefore, Plaintiff's Fourteenth Amendment procedural due process claim is foreclosed, and will be dismissed.

   E.   Substantive Due Process Claims

   The Fourteenth Amendment to the United States Constitution, § 1, guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." <u>American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff</u>, 669 F.3d 359, 366 (3d Cir. 2012).   This clause has procedural and substantive components. <u>Kelley v. Johnson</u>, 425 U.S. 238 (1976). The substantive component of the clause protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." <u>Lawrence v. Texas</u>, 529 U.S. 558, 593 n. 3 (2003)(quotations omitted).   These fundamental rights include those guaranteed by the Bill of Rights, and other liberty and privacy interests found to be implicit in the concept of ordered

liberty, such as the right to marry. Washington v. Glucksberg, 521 U.S. 702, 720 (1997).

Absent conduct that implicates a specific fundamental right, substantive due process also protects against government conduct that is so egregious that it "shocks the conscience." United States v. Salerno, 481 U.S. 739, 746 (1987). Laws disturbing fundamental rights will be upheld, under the strict scrutiny standard, if they are "narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). Laws or regulations that do not implicate fundamental rights are analyzed under the rational basis standard. Glucksberg, 521 U.S. at 728. "Generally, the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, Bell v. Wolfish, 441 U.S. 520, 536 (1979), within the bounds of professional discretion, Youngberg [v. Romeo, 457 U.S. 307, 321-22 (1982)]." Coker v. Christie, Civ. No. 10-2263(FSH), 2010 WL 2802269, at *6 (D.N.J. July 15, 2010)(footnote omitted).

Plaintiff's alleged deprivation of the right to smoke does not implicate a fundamental right. Preventing civilly committed detainees from having electronic cigarettes does not shock the conscience. See Graham v. Sharp, Civ. No. 10-5563(SRC), 2011 WL

18

2491347, at *13 (D.N.J. June 20, 2011)(confiscation of electronic devices is not an extreme condition of confinement); Anderson v. Dacosta, Civ. No. 10-5835(PGS), 2011 WL 2223713, at *12 (D.N.J. June 1, 2011)(same).  This claim will be dismissed.

The Court construes Plaintiff's claim that Defendant Main spread a "false light" on his character as a due process claim based on Plaintiff's failure to advance in treatment because Dr. Main labeled Plaintiff as an "anti-therapeutic influence."  This is the July 2014 incident Plaintiff alleged in his Complaint. (See ECF No. 1-2 at 6).  Plaintiff does not have a right to advance in treatment because there has been a professional decision that he is not ready to advance, and nothing in the record shows the decision was based on something other than professional judgment. See Deavers, 243 F. App'x. at 722 (upholding professional decision to place Plaintiff in restricted activities program)(quoting Youngberg, 457 U.S. at 323 (1982)("[a treatment] decision, if made by a professional, is presumptively valid").

Plaintiff further alleged he was denied adequate and professional treatment.  It is not clear whether Plaintiff was referring to his brief stay in TCC and subsequent placement in MAP, when his participation in treatment was reduced, or if he was asserting a general right to adequate and professional treatment.

19

Apart from his disagreement with Defendant Main's July 2014
decision not to advance Plaintiff in treatment, Plaintiff has not
alleged any facts indicating how his treatment program was
inadequate or unprofessional. Therefore, he has failed to state
a claim. See Barber v. Sharp, Civ. No. 10-5286(PGS), 2011 WL
2223651, at *14 (dismissing conclusory and factually
unsubstantiated claim of inadequate treatment in NJ SVPA setting).

    The Court also construes the following allegation in the
complaint as a substantive due process claim:

> Causing my civil commitment rights under Title
> 30 to now be placed under DOC policy (prison
> guidelines 10A-code) turning what suppose to
> be a treatment facility into a prison
> facility. But yet using the term special
> treatment unit to cover up the equivalent of
> a second prosecution that we/I am enduring
> constantly every day.

(ECF 1-2 at 1.) Courts have dismissed similar claims by others
who are civilly committed under the NJ SVPA because the Supreme
Court held, in Kansas v. Hendricks, 521 U.S. 346, 368-69 (1997)
that involuntary confinement under Kansas' SVPA was not
unconstitutional so long as such civilly-confined persons are
segregated from the general prison population and afforded the
same status as others who have been civilly committed. Belton v.
Singer, Civ. No. 10-6462(SDW), 2011 WL 2690595, at *6-7 (D.N.J.

20

July 8, 2011); Barber v. Christie, Civ. No. 10-1888(SRC), 2010 WL
2723151, at *7 (D.N.J. July 7, 2010); Wolfe v. Christie, Civ. No.
10-2083(PGS), 2010 WL 2925145 at *4-5 (D.N.J. July 19, 2010);
Coker, 2010 WL 2802269, at *5 (finding the NJ SVPA is essentially
the same as the Kansas Act).  The same is applicable to Plaintiff's
claim, and it will be dismissed.

The primary allegation in Plaintiff's Complaint is that his
placement in TCC violated his rights.  Placement of a civilly
committed SVP in segregated confinement does not violate due
process unless the deprivation of liberty is in some way extreme.
See Deavers, 243 Fed. App'x at 721 (3d Cir. 2007) (applying
standard announced in Sandin, 515 U.S. 472 (1995); see also
Thielman, 282 F.3d 478 (extending Sandin to civil commitment
settings).  Here, Plaintiff was in segregated confinement less
than three full days.  This depravation was not so extreme as to
violate Plaintiff's right to substantive due process.  Similarly,
Plaintiff's complaint that he remained in segregation for some
time on August 28, after he was designated to MAP, a lesser
restricted program, on August 27, is not an extreme deprivation of
liberty, and does not rise to the level of a constitutional
violation.

21

Petitioner also alleged that incident to his placement in TCC, he was strip searched, with a visual body cavity search, while officers laughed. Although such claims are typically analyzed under the Fourth Amendment protection against unreasonable search and seizure, Plaintiff did not allege a Fourth Amendment violation. The Court will construe the claim as whether the search constituted prohibited punishment under the Due Process clause of the Fourteenth Amendment. See Bell, 441 U.S. at 561-62 (holding that visual body cavity searches of pretrial detainees did not constitute punishment under the Fifth Amendment right to due process; Respondents did not meet heavy burden to show officials exaggerated their response to the genuine security considerations).

The Supreme Court upheld strip searches with visual body cavity searches of pretrial detainees upon intake into jail, regardless of the fact that the detainees had not been convicted of a crime, based upon security concerns that any detainee might have contraband. See Florence v. Board of Chosen Freeholders of County of Burlington, 132 S.Ct. 1510 (2012). This Court sees no reason why civilly committed sex offenders would have greater constitutional protections than pretrial detainees, where there is a legitimate security reason to conduct the search.

Here, Plaintiff was searched upon being moved from the general population to segregation.  Although Plaintiff alleged he was put in segregation for retaliatory reasons, his complaint also indicates he was put in segregation for possession of contraband. There is a legitimate concern that a person coming from the general population may possess contraband that could be used to inflict harm on himself while in segregation.  Compare Beaulieu v. Ludeman, 690 F.3d 1017, 1029 (8th Cir. 2012)(finding policy of performing strip searches and visual body cavity searches on all patients before they left the secured perimeter was reasonable based on concern the hidden contraband could be used to harm others.)  Thus, the strip search with visual body cavity search here was not so extreme as to constitute punishment under the Due Process clause.  See Graham, 2011 WL 2491347, at *10 (denying constitutional claim regarding strip search of SVP who was verbally degraded during search but did not allege physical force or that search was conducted solely for punishment.")  Therefore, this claim will be dismissed.  For all of the reasons discussed above, the Court will dismiss the complaint, pursuant to 28 U.S.C. § 1915(e)(2)(b), for failure to state a claim.

23

**STANLEY R. CHESLER**
**UNITED STATES DISTRICT JUDGE**

24